UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:20-CR-43-KAC-JEM ) |
| ANTHONY D. BROWN, | ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Anthony Brown's Motion for Release Pending Sentencing [Doc. 125], which was referred to the undersigned on December 20, 2023 [Doc. 132]. *See* 28 U.S.C. § 363(b)(1)(B).[1] Defendant Brown, who is detained pending his sentencing hearing on February 16, 2023, asks to be released on conditions to seek evaluation and treatment for a cyst or growth on the back of his head, which causes him pain [Doc. 125 p. 1]. Defendant contends that although the cyst has been lanced and drained at least twice during his detention, it reoccurs, and that his medication causes severe constipation and blood in his stool [*Id.*]. He asks to be released to seek treatment in a hospital in Detroit, Michigan, where he has received treatment in the past [*Id.* at 3].

While on release, Defendant proposes living at the residence of Ms. Siyonna Whitaker, who is the mother of one of his children and a nurse [Doc. 161 p. 1]. Defendant also proposes home detention and electronic monitoring. Defendant argues that he is not a danger or a flight

---

[1] A magistrate judge may submit proposed findings of fact and a recommended disposition on "applications for post[-]trial relief" by criminal defendants. 28 U.S.C. § 363(b)(1)(B). Here, Defendant Brown's motion to change his plea to guilty was granted by United States District Judge Katherine A. Crytzer on August 19, 2022 [Doc. 119, Minutes]. At the conclusion of the change of plea hearing, Judge Crytzer remanded Defendant into custody [*Id.*]. Thus, Defendant is detained pursuant to Judge Crytzer's order.

risk and that his medical condition constitutes an exceptional reason for his release pending sentencing [Doc. 125 p. 3]. The Government opposes release, asserting that Defendant's cyst is being treated while he is in custody and that he is both a danger and a flight risk [Doc. 158].

While the undersigned sympathizes with Defendant's reoccurring medical issues, the Court finds Defendant has failed to carry his burden of showing that he is not a danger or flight risk, if released. Moreover, Defendant has not shown clear evidence of a compelling reason for his release pending his sentencing hearing. Accordingly, for the reasons discussed herein, the undersigned recommends that the Defendant remain detained pending his sentencing.

I. PROCEDURAL POSTURE AND APPLICABLE LAW

On August 19, 2022, Defendant Brown entered a plea of guilty to conspiracy to possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1) and 841(b)(1)(A), an offense carrying a mandatory minimum sentence of ten years of imprisonment [Doc. 119, Minutes; Doc. 116, Plea Agreement]. The District Judge ordered that the Defendant remain in custody until his sentencing hearing [Doc. 119, Minutes]. Because the Defendant has admitted his guilt to a violation of the Controlled Substances Act ("CSA"), for which the maximum potential sentence is ten years or more of incarceration, he must meet a high standard to show he is eligible for release pending his sentencing hearing. *See* 18 U.S.C. § 3143 (relating to the release or detention of a defendant pending sentencing). Detention for a person found guilty of "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the" CSA, 18 U.S.C. § 3142(f)(1)(C), is mandatory, unless:

> (A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; **and**

2

> (B) The judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis supplied). "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). There is nothing in the record to indicate that either subsection (A)(i) or (A)(ii) applies here, and thus, his detention is mandatory.

The Court's inquiry, however, does not end there. "A person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section 3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Accordingly, a defendant subject to mandatory detention pending his sentencing hearing must show (1) clear and convincing evidence that he or she is not likely to flee or to be a danger and (2) clear evidence of an exceptional reason or reasons why he or she should not be detained. 18 U.S.C. § 3145(c).

II. SUMMARY OF MEDICAL RECORDS

On April 24, 2020, Defendant Brown appeared before United States Magistrate Judge H. Bruce Guyton for a detention hearing. Judge Guyton ordered that Defendant be detained pretrial, finding him to be both a danger to the community and a flight risk [Doc. 30 pp. 1–2, 6, 10]. As a part of its analysis, the Court assessed the medical risk to Defendant if he were to contract Covid-19 while in custody [*Id.* at 5–10]. The Court observed, "[w]hile Defendant asserts that he has a cyst on the back of his head which must occasionally be drained, Defendant has failed to set forth a specific risk of exposure or that the measures in place during his detention are insufficient to mitigate any such risk" [*Id.* at 6]. Accordingly, Defendant was detained pending

3

trial [*Id.* at 10]. As stated above, the District Judge ordered Defendant's continued detention following his entry of a guilty plea [Doc. 119].

Defendant attached to his Motion for Release a portion of the medical records relating to his treatment while in custody [Doc. 125-1]. These records show that on June 9, 2020, Dr. Melissa Trekell excised a "lipoma"[2] from Defendant's scalp in the occipital area [*Id.* at 5–6]. The excised lipoma was submitted for pathological testing [*Id.* at 7]. Seven and one-half months later, Defendant was taken to Surgical Specialists of Tennessee on February 23, 2021, to have a cyst on his head lanced and drained [*Id.* at 8, Consent Form]. Records from Laurel County Correctional Center on March 18, 2021, state that Defendant's head is normal "with no lesions . . . noted" [*Id.* at 10]. On June 27, 2022, Defendant was examined for a suspected lipoma on his posterior scalp, and the healthcare provider stated that a Magnetic Resonance Image ("MRI") could assist with further evaluation [*Id.* at 14]. Defendant received the medication Meloxicam periodically in late July and August 2022, but the records do not indicate why this medication was administered [Doc. 125-1 pp. 11–12].

Upon referral of the Motion for Release, the undersigned ordered Defendant to supplement his motion with his current medical condition, the course of treatment prescribed, and the details of his proposed medical furlough [Doc. 132 p. 1]. Defendant filed a supplement on January 4, 2023, attaching records from Defendant's recent medical treatment and evaluation while in custody [Doc. 147]. Defendant was seen by an offsite physician on December 1, 2022, for headache and blurry vision [Doc. 147-1 p. 1]. Defendant reported to the doctor that "when fluid gets on his brain[,] he has a headache" [*Id.*]. The doctor performed a Computed

---

[2] The Harvard Medical School's online medical dictionary defines "lipoma" as "[a] noncancerous tumor or growth composed of fat cells." *Medical Dictionary of Health Terms*, Harvard Health Publishing (Jan. 31, 2023), https://www.health.harvard.edu/j-through-p#L-terms.

4

Tomography ("CT") scan, which was "unremarkable" and revealed "no evidence that this is a flare or worsening of his intracranial hypertension" [*Id.*]. The doctor suspected a "pseudotumor cerebri,"[3] prescribed the medication acetazolamide, and recommended Defendant see a neurologist [*Id.*]. An MRI of Defendant's brain performed on December 8, 2022, was also "unremarkable" [Doc. 147-2 p. 1]. The record for the MRI noted Defendant's symptoms as a "soft tissue mass on posterior aspect of scalp and migraine headaches" [*Id.*]. Defendant was examined by a physician at the jail on December 11, 2022, and that doctor noted a "soft mass [on Defendant's] occipital area" and referred Defendant for a neurology appointment [Doc. 147-1 p. 5]. Defendant had a follow up appointment at the jail on December 14, 2022, and the physician continued the acetazolamide and again referred Defendant for a neurology consult [*Id.* at 6].[4]

---

[3] The medical website Johns Hopkins Medicine defines "pseudotumor cerebri," which is "also known as idiopathic intracranial hypertension, [as] a problem caused by elevated cerebrospinal fluid pressure in the brain." *Health Conditions and Diseases: Pseudotumor Cerebri*, Johns Hopkins Medicine (Jan. 31, 2023), https://www.hopkinsmedicine.org/health/conditions-and-diseases/pseudotumor-cerebri. This condition mimics symptoms from a brain tumor, but the patient has "normal scans." *Id.*

[4] At a motion hearing on January 25, 2023, the Government proffered that officers attempted to transport Defendant to a neurology appointment on January 17, 2023, but Defendant refused the appointment. Defense counsel explained that Defendant thought the officers were taking him to the medical unit at the jail for an appointment regarding rectal bleeding due to severe constipation, following his complaint of these symptoms the night before. Defense counsel proffered that Defendant would not have refused the appointment if he had understood the purpose of the appointment. The Government introduced a Refusal of Treatment form, signed by Defendant Brown, and dated January 17, 2023 [Exh. 1]. The form states that the purpose of the treatment was explained to Defendant, but the purpose of the appointment is not stated on the form [Exh. 1]. Whether Defendant understood the appointment was for a neurology consult is not clear from the record, but the Court finds that Defendant refused the jail's attempt to provide medical care, even if he misunderstood the purpose of the appointment.

## IV. ANALYSIS

Defendant Brown asks to be released pending his sentencing hearing so that he can seek medical evaluation and treatment in Detroit, Michigan, for a cyst on his head. As noted above, Defendant asks to be released to live with Siyonna Whitaker and offers to be on home detention and to submit to electronic monitoring while on release. The Court examines whether the Defendant is a danger or a flight risk and whether there are exceptional reasons for his release.

### A. Flight Risk or Danger

In consideration of releasing Defendant for medical treatment pending his sentencing hearing, the Court has weighed the factors set forth in 18 U.S.C. § 3142(g) in light of the medical records summarized above, the Defendant's Presentence Report [Doc. 129, SEALED] and Addendum [Doc. 149, SEALED] proffered by the Government, the parties' proffers and the exhibit from the January 25, 2022 hearing, and Defendant's supplemental Requested Information in Support of Medical Furlough Pending Sentencing [Doc. 161] and exhibits on his proposed conditions of release. For the reasons discussed below, the Court finds that Defendant Brown has failed to carry his burden of showing by clear and convincing evidence that he is not a danger or a flight risk. *See* Fed. R. Crim. P. 46(c) (providing that for a defendant seeking release pending sentencing, the "burden of establishing that the defendant will not flee or pose a danger . . . rests with the defendant"); *see also* 18 U.S.C. § 3143(a) (providing for detention pending sentencing unless the court finds "by clear and convincing evidence that the person is not likely to flee or pose a danger" to the safety of another or the community upon release).

As an initial matter, the Court finds a rebuttable presumption applies in this case, requiring the Court to presume that no condition or combination of conditions will reasonably assure the Defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

Defendant Brown has entered a plea of guilty to conspiracy to distribute methamphetamine, an offense under the CSA for which he faces a maximum sentence of ten years or more. *See* 18 U.S.C. § 3142(e)(3)(A). This presumption places the burden of production with the Defendant, who must "produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). In this case, Defendant summarily contends that he is neither a flight risk nor a danger [Doc. 125 p. 3]. At the January 25 hearing, Defendant proffered that he would live in Detroit, Michigan, with Siyonna Whitaker, who is a nurse and the mother of one of his children, and that he would submit to home detention and electronic monitoring. On January 27, 2023, Defendant filed a supplement to his proffer, giving Ms. Whitaker's address, details about her employment, and a letter stating her willingness to allow Defendant to live with her and to assure that Defendant followed his conditions of release [Doc. 161 & Exhs.]. The facts Defendant proffered at the hearing and in his supplement are sufficient to meet his low burden of production. Thus, the presumption becomes one of several factors that the Court weighs under § 3142(g). *Stone*, 608 F.3d at 945.

Turning to the § 3142(g) factors, the Court first considers the nature and circumstances of the charged offenses, including whether the offense involves a controlled substance. 18 U.S.C. § 3142(g)(1). Here, Defendant has entered a guilty plea to conspiracy to possess fifty grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Based upon law enforcement testimony at the evidentiary hearing on Defendant's suppression motion, the Court found that officers seized eight pounds of methamphetamine from the trunk of the car in which Defendant was traveling [Doc. 84, Report

and Recommendation, p. 18]. The Court finds both the nature and the circumstances of the offense show Defendant Brown poses a danger to the community.

The Court next considers the weight of the evidence against the Defendant. 18 U.S.C. § 3142(g)(2). In *United States v. Stone*, the Sixth Circuit clarified that the weight of the evidence against the defendant "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." 608 F.3d at 948. Here, the Defendant has entered a guilty plea to drug trafficking, which in and of itself is dangerous. *See id.* at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (finding drug trafficking to be inherently dangerous). According to the factual basis in Defendant's plea agreement, Defendant knew about the methamphetamine in the trunk of the vehicle in which he was traveling, he had agreed to distribute the methamphetamine, and he knew that his coconspirators planned to transport the methamphetamine and then sell it to others once they reached their destination [Doc. 116 p. 2]. Our appellate court "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6. The Court finds this factor supports a finding that Defendant presents a danger to the community.

Third, the Court must consider a host of factors relating to Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3)(A). Defendant Brown is thirty-three years old and a lifelong resident of Detroit, Michigan. Twelve of his thirteen children live in Detroit. Defendant proposes to live with Siyonna Whitaker, the mother of his five-year-old child, in a suburb of Detroit. Although it is not clear that Defendant is offering Ms. Whitaker as a third-party custodian, Ms. Whitaker provided a letter to the Court in which she states that she will make sure

Defendant follows any conditions of release [Doc. 161-4].  Defendant has a recurring cyst or growth on the back of his head, and Ms. Whitaker is a nurse.  Ms. Whitaker also offers to provide transportation for Defendant [*Id.*].  While these factors generally support release, other of Defendant's history and characteristics show him to be a danger and a flight risk.

Defendant's substance abuse history and criminal history are at odds with his contention that he is not a danger.  The Court's prior detention order reflects that Defendant admitted to daily marijuana use since age eleven and the occasional use of hydrocodone [Doc. 30 p. 5].  Also, Defendant has prior criminal convictions for carrying a concealed weapon, being felon in possession of a firearm, possession of a controlled substance, and possession of ammunition by a felon.  Defendant was arrested in September 2019 for assault.  *See United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, at *4 (E.D. Tenn. Dec. 4, 2017) (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention").  These characteristics show Defendant to be a danger.

The Court observes the Presentence Report shows that Defendant has multiple aliases, which supports a finding that he is a flight risk.  Additionally, the Government argues that Defendant has agreed to a sentence of ten years of incarceration, which it contends provides a strong motivation for Defendant to flee [Doc. 158 p. 1].  The Court finds these factors show Defendant to be a flight risk.

Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  Defendant Brown has entered a plea of guilty to conspiring to possess with intent to distribute fifty grams or more of methamphetamine.  He is presumed to be a danger due to the nature of the

9

offense to which he has admitted guilt. *See* 18 U.S.C. § 3142(e)(3)(A). "Drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6 (referencing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) ("The risk of continued narcotic trafficking on bail constitutes a risk to the community.")). This factor also supports Defendant's continued detention.

The information before the Court shows the Defendant is both a danger and a flight risk. The Court has considered the conditions proffered by the Defendant, which are that he be released to live with Ms. Whitaker in Detroit, that he be on home detention, and that he wear an electronic monitor, along with other possible conditions and combinations of conditions. Although the Court commends Ms. Whitaker's willingness to support the Defendant, it finds Defendant has failed to show by clear and convincing evidence that the proposed conditions would alleviate Defendant's danger to the community, even if electronic monitoring could ameliorate his flight risk. Accordingly, the Court finds the proposed conditions or any other conditions or combination thereof would not reasonably assure the Court of the safety of the community or the Defendant's appearance for further proceedings in this case.

### B. Exceptional Reason Under § 3145(c)

The Defendant argues that the Court should release him to seek medical evaluation and treatment because his reoccurring cyst provides an exceptional reason for his release. Defendant asserts that authorities have not been able to treat his cyst, which remains a persistent problem. He contends that he has received treatment in a hospital in Detroit in the past and asks to be furloughed to "have the medical matter resolved" [Doc. 125 p. 3]. Even if the Defendant could assure the Court that he is not a danger or a flight risk, which he has failed to do, the Court finds the Defendant has not shown an exceptional reason warranting his release pending sentencing.

Defendant Brown must show clear evidence of exceptional reasons why he should not be detained. 18 U.S.C. § 3145(c); *United States v. Christman*, 596 F.3d 870, 870–71 (6th Cir. 2010) (determining that a district judge may determine whether a defendant has established exceptional reasons under § 3145(c) that justify release pending sentencing and remanding for the district court to evaluate whether exceptional reasons exist). What constitutes an "exceptional reason" for purposes of § 3145(c) is not defined in the statute. *United States v. Christman*, 712 F. Supp. 2d 651, 653 (E.D. Ky. 2010) (on remand). The plain meaning of "exceptional," however, reveals that the reason must be "'out of the ordinary,' 'uncommon,' or 'rare.'" *Id.* at 654 (quoting *United States v. Miller*, 568 F. Supp. 2d 764, 774 (E.D. Ky. 2008)). "[E]ven when there is solid assurance that the defendant will return for sentencing and will do no harm during the interim, § 3145(c) will provide infrequent relief." *Id.* "Exceptional reasons" should set a defendant apart from other persons convicted of similar offenses. *United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993). Moreover, "even exceptional reasons would not justify release if they are based on nothing more than probability, conjecture, intuition or speculation. Instead, according to the statute's explicit language, exceptional reasons must be 'clearly shown' to render a person's detention as inappropriate." *Christman*, 712 F. Supp. 2d at 654.

In this case, the Court finds that while in custody, Defendant Brown is receiving medical evaluation and treatment for his cyst and for the headaches and blurry vision that he attributes to the cyst. Moreover, the cyst appears to be a recurring problem that predates Defendant's arrest and detention in this case. The Court finds Defendant's suggestion that an unnamed hospital in Detroit is in a better position to "resolve" his medical issues to be speculative, given that Defendant proffers that he was treated there before and the issue remains ongoing. Defendant has not provided any evidence or information, much less clear evidence, that his release would

11

result in the resolution of his medical condition or that treatment while in custody is inappropriate.

In *United States v. Vance*, the defendants "provided nothing more than their own testimony in support of their claims that their poor health constitutes a reason to release them temporarily." No. 5: 20-063-DCR, 2023 WL 116331, *4 (E.D. Ky. Jan. 5, 2023). The court found that defendants' bare assertions, unsupported by any record of their medical conditions, do not constitute a clear showing of an exceptional reason for release under § 3145(c). *Id.* Here, although Defendant Brown has provided medical records documenting the cyst on his scalp and the treatment and testing performed while in custody, he has provided nothing to substantiate his claims that the hospital in Detroit would be able to cure his condition or to suggest that he cannot receive the treatment he needs while in custody. Accordingly, the Defendant has not shown clear evidence of an exceptional reason for release.

## V. CONCLUSION

In summary, the Court finds that Defendant Brown has failed to demonstrate that he is not a flight risk or a danger and has failed to show an exceptional reason why mandatory detention should not apply. For the reasons stated herein, the undersigned respectfully **RECOMMENDS** the Defendant remain detained pending his sentencing hearing and that his Motion for Release Pending Sentencing [Doc. 125] be denied.

Due to the need to determine this issue promptly, any objections to this report and recommendation must be served and filed on or before **February 7, 2023**.[5] Any response to

---

[5] Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time waives the right to appeal the district court's order). The District Judge need not provide *de novo* review where objections to this report and

12

Case 3:20-cr-00043-KAC-JEM   Document 165   Filed 01/31/23   Page 12 of 13   PageID #: 826

objections must be filed on or before **February 14, 2023**. If either party deems no objection or response is necessary, it shall file a notice of same as soon as possible and no later than the deadline for objection or response.

Respectfully submitted,

*/s/ Jill E. McCook*
Jill E. McCook
United States Magistrate Judge

---

recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

13